FILED
HARRISBURG, PA

JAN 2 2 2020

PER _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. NO. 1:20-cr-020 |
| v. | ( JONES , J.) |
| FIRST CAPITAL INSULATION, INC., FRANCIS RICHARD YINGLING, JR., LOBAR, INC., DENNIS LEE CHARLES, JR., M & J EXCAVATION, INC., JOHN AUGUST SIDARI, JR., and TY ALLEN BARNETT, | |
| Defendants. | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

## COUNTS 1 – 6
### 42 U.S.C. § 7413(c)(1)
### (Clean Air Act)

At times material to this Indictment:

## INTRODUCTION

### A.     The Clean Air Act and Asbestos

1.     The Clean Air Act was enacted by Congress to protect and enhance the quality of the Nation's resources and to promote public health and welfare. 42 U.S.C. §§ 7401 et seq.

2.     The Clean Air Act authorized the United States

Environmental Protection Agency ("EPA") to identify hazardous air

pollutants and to establish regulations to create standards to prevent or

limit the emission of hazardous air pollutants into the atmosphere. The

regulatory standards established by EPA are known as National

Emission Standards for Hazardous Air Pollutants ("NESHAP"). 42

U.S.C. § 7412.

3.     Pursuant to the Clean Air Act, asbestos was designated as a

hazardous air pollutant in 1971. 42 U.S.C. §§ 7412(a)(6) and (b), 40

C.F.R. § 61.01(a). Asbestos is "friable" when it can be crumbled by hand

pressure. Asbestos fibers from friable asbestos material can become

airborne and can be inhaled into the lungs. "Friable asbestos material"

is defined in the regulations at 40 C.F.R. § 61.141.

4. When it was not feasible to prescribe and enforce emission

standards for a particular hazardous air pollutant, as was the case with

asbestos, EPA was permitted to publish work practice standards

requiring that certain procedures be followed when dealing with that

pollutant. 42 U.S.C. § 7412(h).

2

5.     EPA regulates the removal and disposal of "regulated asbestos containing material" ("RACM") above certain threshold quantities from commercial, industrial, public, institutional, and certain multi-unit residential facilities.  40 C.F.R. § 61.141. RACM includes friable asbestos material and other kinds of nonfriable asbestos material that has become or is likely to become friable in the course of a demolition or renovation.  40 C.F.R. § 61.141.

6.     Asbestos work practice standards apply to any owner or operator of a facility who conducts a demolition or renovation operation, when the combined amount of RACM stripped, removed, dislodged, cut, drilled, or similarly disturbed is at least 260 linear feet on pipes, 160 square feet on facility components, or 35 cubic feet of facility components where the length or area of the RACM could not be previously measured.  40 C.F.R. § 61.145(a)(1) and (a)(4).

7.     EPA requires that the owner or operator of a regulated site ensure the removal of asbestos in accordance with work practice standards that are set out in federal regulations.  All RACM must be removed prior to a demolition activity or during a renovation activity or any other activity such as site preparation that would break up,

3

dislodge or similarly disturb asbestos material; the stripping or removal of RACM shall be done in accordance with applicable environmental regulations.  40 C.F.R., Subpart M, § 61.140 et seq.  Among other things, under the work practice standards, the owner and operator of a site where asbestos is being removed must:

    a.    Notify the EPA at least ten working days before beginning the removal project, and update the notice if the amount of asbestos affected changes by at least 20%.

    b.    Unless an alternative method of containing asbestos fibers has been approved in writing by the EPA, remove all RACM from component pipes and carefully lower to the ground RACM without disturbing or damaging the asbestos.

    c.    Adequately wet all RACM during cutting or disjoining and keep wet until it is collected and contained or treated in preparation for disposal.

    d.    Place wetted RACM into leak-tight containers bearing specified asbestos warning labels.

    e.    Label containers of asbestos waste transported off site with name of waste generator and location.

4

f.   Regulated asbestos waste transported off site must be accompanied with an asbestos waste manifest.

g.   Deposit all asbestos-containing waste material as soon as practical at a site that meets the requirements for accepting asbestos-containing waste.

h.   Prevent the discharge of visible emissions to the outside air during the collection, processing, packaging and transporting of RACM.

8.   The Clean Air Act makes it a criminal offense, pursuant to Title 42, United States Code, §§ 7412 and 7413(c), to knowingly violate any of the above-described regulatory work practice standards under the Clean Act.

## B. The Berwick Area School District Facility

9.   In January 2014, the Berwick Area School District ("BASD") in Berwick, Pennsylvania purchased a 175,000 square-foot former weaving mill ("Berwick Facility") located at 506-507 Washington Street, Berwick.   The Berwick Facility consisted of two connected buildings, at times referred to as the "new building 1" and "building 2."

10.   The BASD initiated a project to demolish the Berwick Facility and to construct a new elementary school building ("Berwick Project").

5

The Berwick Facility contained RACM of various kinds, including insulation covering boilers, air cell pipe and pre-mold pipe insulation, 9" x 9" floor tiles and mastic in the office areas, vinyl flooring in the laboratory area, and perimeter glass block window caulking. The Berwick Facility contained RACM in excess of regulatory threshold limits, making the asbestos abatement undertaken prior to demolition of the Berwick Facility subject to EPA regulation under the CAA NESHAP regulations.

### C. **Individuals and Entities**

11. **LOBAR, INCORPORATED** ("LOBAR") was a company headquartered in Dillsburg, Pennsylvania that offered a broad range of construction services. **LOBAR's** services included general construction contracting, commercial electrical contracting, data management, telecommunications contracting and design/build construction services.

12. **DENNIS LEE CHARLES, JR.** ("CHARLES") was a construction superintendent for **LOBAR**. **CHARLES** was responsible for managing large construction projects, which included hiring subcontractors required for **LOBAR's** projects.

6

13. **FIRST CAPITAL INSULATION, INCORPORATED**
(**"FIRST CAPITAL" or "FCI"**) was an environmental services
company headquartered in York, Pennsylvania. **FIRST CAPITAL**
provided comprehensive asbestos and lead abatement and insulation
installation contracting services to public and private clients. **FIRST
CAPITAL** was bonded, accredited and certified to conduct asbestos
abatement in the Commonwealth of Pennsylvania in accordance with
all federal, state and local regulations.

14. **FRANCIS RICHARD YINGLING, JR.** ("YINGLING") was
co-owner, CEO and employee manager of **FIRST CAPITAL**.
**YINGLING** was licensed and certified as an asbestos contractor by the
Commonwealth of Pennsylvania. On behalf of **FIRST CAPITAL,**
**YINGLING** submitted a bid of $217,912.00 for the asbestos abatement
job for the Berwick Project as a subcontractor to **LOBAR**. **YINGLING**
was the identified **FIRST CAPITAL** Berwick Project Designer on the
10-Day Notification submitted to EPA dated January 15, 2015.
**YINGLING** supervised **TY BARNETT**, the on-site asbestos crew
supervisor for **FCI**. **BARNETT** was in contact with **YINGLING** during
the early days of the asbestos abatement job regarding the on-site

7

asbestos containment problems and the lack of a water source.
**YINGLING** was the **FIRST CAPITAL** representative who
communicated with **LOBAR** throughout the job about the asbestos
abatement.

15. **TY ALLEN BARNETT** ("**BARNETT**") was an asbestos
abatement contractor with 27 years of experience, certified and licensed
at various times by the Commonwealth of Pennsylvania. **BARNETT**
was employed as a project supervisor by **FIRST CAPITAL**. As a
project supervisor, he was responsible for directing a crew of licensed
and certified asbestos workers on **FIRST CAPITAL** job sites.

16. **M & J EXCAVATION, INCORPORATED ("M & J
EXCAVATION"),** was a company headquartered in Bloomsburg,
Pennsylvania that offered a variety of land preparation services. **M & J
EXCAVATION's** services included land clearing, grading, erosion and
control services, demolition, and installation of underground electrical,
water and sewer lines.

17.   **JOHN AUGUST SIDARI, JR. ("SIDARI")** was the co-
owner and Vice President of **M & J EXCAVATION.**

8

### D. **The Berwick Project**

18.  Prior to purchasing the Berwick Facility in January 2014, the BASD reviewed a Phase1 Site Assessment Report ("Phase 1 Report") prepared by United Environmental Services ("UES").  The Phase 1 Report identified hazardous substances, including asbestos, located on-site at the Berwick Facility.

19.  To further study RACM at the Berwick Facility, the BASD contracted with an Environmental Consultant & Abatement Contractor, EHC Associates, Inc., to perform an Asbestos-Containing Materials Survey and Sampling Survey Log ("EHC Report") to identify all RACM, the condition of the RACM, the percentage of asbestos in the RACM and the locations of RACM throughout the Berwick Facility. A certified and licensed asbestos inspector for EHC performed the survey and sampling, and provided the EHC Report to the BASD.

20.  On November 3, 2014, the BASD issued Addendum No. 4 to its contract bid package, which had included the Phase 1 Report and EHC Report.  Addendum No. 4 clarified the requirements for handling all hazardous substances, including asbestos, and required each bidder to acknowledge receipt of the Addendum No. 4 in its bid proposal.

9

21.    On December 5, 2014, the BASD awarded a general construction contract to **LOBAR** in the amount of $13,150,200.00. **LOBAR** was responsible to complete the Berwick Project, including overseeing its subcontractors. **LOBAR** hired **FIRST CAPITAL**, a subcontractor, to remove RACM at the Berwick Facility, and **M & J EXCAVATION,** a subcontractor, to demolish the Berwick Facility after all of the RACM had been removed.

22.    In addition to preparing the EHC Report, the BASD hired EHC Associates, Inc. to provide environmental hazard control and air monitoring during the asbestos removal by **FIRST CAPITAL**. In or about February 2015, an EHC employee was placed on-site to ensure that all RACM was properly removed prior to the demolition activity in accordance with CAA regulations, including that it was adequately wet before it was stripped off or removed from a facility component; remained wet until it was collected, bagged and labeled for disposal; and, that RACM visible emissions were not exposed to the outside air. The EHC employee was also responsible to conduct air monitoring during the asbestos removal.

23.    On or about December 15, 2014, before on-site activities began, EHC met with representatives from **LOBAR**, including **CHARLES** and **M&J EXCAVATION's SIDARI**, and informed them of the findings of the EHC Report, the on-site conditions, the location of RACM throughout the Berwick Facility and advised them that no on-site worker should enter the facility without personal protective equipment ("PPE").

24.    On January 15, 2015, **FIRST CAPITAL** submitted a 10-Day Notification ("Notification") to the U.S. Environmental Protection Agency ("EPA") advising that asbestos abatement would be conducted from January 29, 2015 through March 27, 2015 at the Berwick Facility. The Notification identified approximately 4,129 linear feet of friable pipe insulation, 1,218 square feet of friable boiler insulation, and large quantities of Category 1 and 2 non-friable RACM to be removed.

25.    **LOBAR's CHARLES** was responsible for overseeing **LOBAR's** and subcontractors' day-to-day on-site activities in furtherance of completion of the Berwick Project. In or about January 2015, **CHARLES** directed **SIDARI** and three **M & J EXCAVATION** employees to begin cleaning out the Berwick Facility by removing loose

11

items and loose debris, to demolish interior stud and drywall walls in building 2, and to start demolition for the new building. Thereafter, at the direction of **CHARLES** and **LOBAR**, **SIDARI** and **M & J EXCAVATION** stripped, removed and otherwise handled and disturbed RACM at a regulated facility without having at least one on-site representative present, such as a foreman, management-level person and other authorized representative, trained in the provisions of NESHAP.

26.    In or about January 2015 through on or about February 18, 2015, **CHARLES** maintained Daily Job Reports to identify all on-site contractors and work performed.

27.    In or about January 2015, **SIDARI** had two dumpsters delivered to the Berwick Facility, an M & J dump truck and trailer, a white Bobcat skid steer, and a white Bobcat excavator.

28.    In or about January 2015, **M & J EXCAVATION** demolished an exterior wall with perimeter glass block and caulking with a bobcat skid steer to gain access to the former office areas. According to the EHC Report the "Glass Block Perimeter Window Caulk

Exterior Windows of 180 Units" contained 3% Chrysotile non-friable asbestos. **M & J EXCAVATION** disturbed this RACM.

29. According to the EHC Report, the former office areas had severely damaged 9" x 9" floor tiles (black) and (red) containing 5% Chrysotile non-friable asbestos. **M & J EXCAVATION** disturbed this RACM.

30. In or about January 2015 and continuing through on or about February 17, 2015, **M & J EXCAVATION** began a demolition of the back area of the building, poked a hole through the building behind the office areas, demolished a hole into the laboratory area, and disturbed pipe insulation in various areas.

31. According to the EHC Report, the laboratory area had vinyl flooring in a stone pattern that contained 25% Chrysotile non-friable asbestos, pipe insulation wrap (white) in the laboratory HVAC area of 70% Chrysotile friable asbestos, and air cell pipe insulation throughout the building of 65% Chrysotile friable asbestos. **M & J EXCAVATION** disturbed RACM and conducted a demolition before all RACM was removed.

32.   Despite **M & J EXCAVATION's** activities at the Berwick
Facility as described herein, **M&J EXCAVATION** did not execute a
demolition contract with **LOBAR** until on or about February 26, 2015.

33.   **FIRST CAPITAL** assigned **BARNETT** to be the project
supervisor, overseeing a crew of seven FCI employees, to conduct the
asbestos removal at the Berwick Facility.

34.   Sometime in early February 2015, two **FIRST CAPITAL**
employees visited the Berwick Facility to assess the ongoing Berwick
Project.  At that time, several exterior walls had been removed from the
Berwick Facility and piles of dry RACM were loose on the floor, in black
unlabeled plastic bags, and in open boxes throughout the facility.
RACM was also present in an open dumpster. **FIRST CAPITAL's**
**YINGLING** was thereafter notified that the facility did not have
available water to properly wet down and keep wet the RACM to be
removed.

36.   **YINGLING, LOBAR's CHARLES** and **M & J**
**EXCAVATION's SIDARI** were notified by one and more **FIRST**
**CAPITAL** employees that the start of the demolition and the presence

of uncontrolled asbestos debris were problematic as the asbestos debris was exposed to the outside environment.

37.    On February 14, 2015, a union organizer for the International Association of Heat & Frost Insulators & Allied Workers, Local 23 visited the Berwick Facility and noted the uncontrolled dry asbestos debris.  The union organizer notified **LOBAR's CHARLES** and **M & J EXCAVATION's SIDARI** that the demolition of the exterior walls should not have begun in advance of the asbestos removal, and that uncontrolled asbestos debris was exposed to the outside environment.

38.    Thereafter, between on or about February 16, 2015 and on or about February 18, 2015, **YINGLING** nevertheless assigned **BARNETT,** and seven **FIRST CAPITAL** employees under his supervision, to continue work at the Berwick Facility.  The FCI employees conducted an unlawful dry removal of asbestos insulation on the boiler in building 2, and swept dry asbestos insulation pieces into black plastic bags without wetting and keeping it adequately wet.

39.    On or about February 16, 2015, an EHC employee was on-site when **FIRST CAPITAL** arrived on the job.  The EHC employee

noted that the Berwick Facility was uncontained and that loose, dry asbestos was present. Sufficient water was not available in the facility to wet the asbestos, and as a result, the EHC employee noted that many bags of loose asbestos were dry.

40. On or about February 17, 2015, **FIRST CAPITAL** obtained a 350-gallon water tote and one garden hose to share among the eight workers. The water tote and hose provided insufficient water to wet the RACM and sharing one hose among eight workers did not allow for wetting the RACM during stripping and removal.

41. On February 18, 2015, an EPA asbestos inspector went to the Berwick Facility and was met by **BARNETT.** The EPA asbestos inspector visually inspected 100 to 150 unlabeled black plastic bags full of dry RACM. The EPA inspector collected six samples from individual plastic bags and took photographs of the dry RACM. The six samples taken of block insulation from the boiler room contained between 35% to 60% amosite asbestos and 10% to 50% chrysotile asbestos.

42. The EPA asbestos inspector walked the perimeter of the building and took an additional sample from unwrapped, uncontained unwetted suspected RACM debris on the ground outside the Berwick

16

Facility. This sample of air cell pipe insulation contained 45%

chrysotile asbestos. The EPA inspector also noted suspect pipe wrap

insulation in an **M & J EXCAVATION** open dumpster outside the

facility.

## STATUTORY ALLEGATIONS

43.    From on or about January 23, 2015, through on or about

February 18, 2015, in the Middle District of Pennsylvania, the

defendants,

**LOBAR, INC.,**
**DENNIS LEE CHARLES, JR.,**
**M & J EXCAVATION, INC., and**
**JOHN AUGUST SIDARI, JR.,**

aiding and abetting each other and others, and aided and abetted by

each other and others, knowingly violated, and knowingly caused the

violation of, Clean Air Act regulations governing work practices and

waste disposal involving RACM, to wit, 40 C.F.R. §§ 61.145 and 61.150,

by knowingly engaging in prohibited activities at 506-507 Washington

Street, Berwick, Pennsylvania as follows:

> **Count 1**: Beginning demolition and renovation activity that would
> break up, dislodge and similarly disturb RACM at a facility before
> the RACM was removed from the facility, in violation of 40 C.F.R.
> § 61.145(c)(1).

**Count 2**. Failing to adequately wet, during demolition and renovation activity that alters a facility and one and more facility components in any way, all RACM exposed during cutting and disjoining operations of facility components that contain, are covered with and coated with RACM, in violation of 40 C.F.R. § 61.145(c)(2)(i).

**Count 3**. Failing to adequately wet RACM and ensure that it remains wet until collected, contained and treated in preparation for disposal in accordance with 40 C.F.R. § 61.150, in violation of 40 C.F.R. § 61.145(c)(6)(i).

**Count 4**. Stripping, removing and otherwise handling and disturbing RACM at a regulated facility without having at least one on-site, present representative, such as a foreman, management-level person and other authorized representative, trained in the provisions of NESHAP, in violation of 40 C.F.R. § 61.145(c)(8).

**Count 5**. Placing RACM in containers and wrapping that were not leak-tight, in violation of 40 C.F.R. § 61.150(a)(1)(iii).

**Count 6**. Placing asbestos-containing materials generated by the demolition and renovation activity of an affected facility, within the meaning of 40 C.F.R. § 61.145, in containers and wrapping that were not labeled with warning labels specified by Occupational Safety and Health Standards of the Department of Labor, Occupational Safety and Health Administration (OSHA), in violation of 40 C.F.R. § 61.150(a)(1)(iv).

All in violation of Title 42, United States Code, § 7413(c)(1) and Title 18, United States Code, § 2.

**THE GRAND JURY FURTHER CHARGES:**

<u>**COUNTS 7 – 10**</u>
**Title 42 U.S.C. § 7413(c)(1)**
**(Clean Air Act)**

44.    The allegations contained in paragraphs 1-42 are incorporated by reference.

45.    From on or about January 23, 2015, through on or about February 18, 2015, in the Middle District of Pennsylvania, the defendants,

**FIRST CAPITAL INSULATION, INC.,**
**FRANCIS RICHARD YINGLING, JR., and**
**TY ALLEN BARNETT,**

aiding and abetting each other and others, and aided and abetted by each other and others, knowingly violated, and knowingly caused the violation of, Clean Air Act regulations governing work practices and waste disposal involving RACM, to wit, 40 C.F.R. §§ 61.145 and 61.150, by knowingly engaging in prohibited activities at 506-507 Washington Street, Berwick, Pennsylvania as follows:

19

**Count 7**. Failing to adequately wet, during demolition and renovation activity that alters a facility and one and more facility components in any way, all RACM exposed during cutting and disjoining operations of facility components that contain, are covered with and coated with RACM, in violation of 40 C.F.R. § 61.145(c)(2)(i).

**Count 8**. Failing to adequately wet RACM and ensure that it remains wet until collected, contained and treated in preparation for disposal in accordance with 40 C.F.R. § 61.150, in violation of 40 C.F.R. § 61.145(c)(6)(i).

**Count 9**. Placing RACM in containers and wrapping that were not leak-tight, in violation of 40 C.F.R. § 61.150(a)(1)(iii).

**Count 10**. Placing asbestos-containing materials generated by the demolition and renovation activity of an affected facility, within the meaning of 40 C.F.R. § 61.145, in containers and wrapping that were not labeled with warning labels specified by Occupational Safety and Health Standards of the Department of

Labor, Occupational Safety and Health Administration (OSHA), in violation of 40 C.F.R. § 61.150(a)(1)(iv).

All in violation of Title 42, United States Code, § 7413(c)(1) and

Title 18, United States Code, § 2.

A TRUE BILL

FOREPERSON:

Date: January 22, 2020

DAVID J. FREED
United States Attorney

WILLIAM BEHE
ASSISTANT UNITED STATES ATTORNEY

PATRICIA C. MILLER
SPECIAL ASSISTANT U. S. ATTORNEY